A. D. IRELAND, *Exec., etc. v.* ARTHUR GUY HIBBS *et al.*

(No. 9351)

Submitted September 29, 1942. Decided November 4, 1942.

*K. C. Moore* and *R. E. Bills,* for appellants.
*A. D. Ireland,* for appellee.

KENNA, JUDGE:

This proceeding in chancery was brought in the Circuit Court of Wood County by A. D. Ireland, executor of the will of Lucinda S. Hibbs, against Arthur Guy Hibbs and others, being the heirs at law, devisees and creditors of Lucinda S. Hibbs, for the purpose of subjecting two

parcels of land located in Wood County and an undivided interest in oil and gas in place located in Ritchie County, of which the decedent died seised and possessed, to the payment of her indebtedness, the personal estate alleged to be insufficient for that purpose. The cause was referred to a commissioner in chancery for the purpose of ascertaining the assets and liabilities of the decedent's estate. Upon the incoming of the commissioner's report, Arthur Guy Hibbs, Nettie Dulin and Mary Craig excepted to that part of the report allowing Beuna Wood the entire amount of her claim for services rendered her mother, Lucinda S. Hibbs, during a lengthy illness from June 26, 1935, to December 31, 1939, the date of the latter's death. The entire amount of the Wood claim, including interest, as of the date upon which the decree was entered, January 21, 1942, was $2,608.00. The trial chancellor overruled the exceptions to the commissioner's report, confirmed the report in its entirety, and, upon ascertaining that the personal estate of the decedent was "wholly insufficient to pay off and discharge the debts due from her", ordered the three interests in land, that is to say, a farm consisting of seventy-two acres upon which the dwelling in which the decedent resided is located, in Wood County, a tract of seventy-four acres and four poles, also in Wood County, and a one-ninth interest in the oil and gas underlying a tract of seventy-two acres in Ritchie County, sold. The decree of sale instructs the special commissioner to give notice of the time, terms and place of sale in a Parkersburg paper as required by statute "in such case made and provided". Accompanied by a recital to the effect that Arthur Guy Hibbs, Nettie Dulin and Mary Craig desire to appeal therefrom, the effect of the decree is suspended for a period of sixty days, during which time, this Court granted the appeal upon the application of the parties named in the decree's recital.

The assignments of error are nine in number, the first five being procedural and stating that the trial chancellor erred by not applying the proceeds of the personal estate to the payment of the indebtedness prior to ordering sale and thereby reaching and fixing a sum certain for which

the parties in interest might redeem; that it was error to order the undivided interest located in Ritchie County to be sold pursuant to a notice of sale published in Wood County; that it was error to order a sale without specifying the time that the notice of sale should run; that it was error to order a sale without requiring a notice to be posted at the courthouse in Wood County and at the courthouse in Ritchie County; and that it was error to order a sale without fixing the terms under which the purchase price should be paid. The remaining assignments of error all go to the allowance of the claim of Beuna Wood, and we believe do not require separate consideration. In addition to the specific assignments of error, the appellants contend here for the first time that the Circuit Court of Wood County lacked jurisdiction to entertain this proceeding due to the fact that prior to its institution, the County Court of Wood County had referred the estate of Lucinda S. Hibbs to a commissioner of accounts of that county who had not reported and who, consequently, retained jurisdiction at the time this proceeding was brought. There is no showing in this record of the facts upon which this point is based, and since, in this jurisdiction, it is well settled that the chancery jurisdiction of a circuit court is paramount to that of a county court in matters relating to the settlement of the estate of a deceased person, the question will not be further considered. *McComb* v. *McComb,* 121 W. Va. 53, 200 S. E. 49; *Travis* v. *Travis,* 116 W. Va. 541, 182 S. E. 285.

Concerning the first five assignments of error listed above, the position taken by the appellee against sustaining them resolves itself finally into a question of practical expediency. He contends that the personal estate has been appraised and correctly valued in the amount of $126.00, and that that amount is less than enough to defray the cost and expenses involved in this proceeding; that although the decree of sale requires no advertisement nor posting in the county of Ritchie, where the undivided oil and gas interest is located, that can, and will, be taken care of before the day of sale is reached; that the same is true of the publication and posting of notice in Wood

County, and that the provisions of Code, 55-12-2, will be followed in that regard; and that it is unnecessary in a decree of sale to fix the terms of sale, but that after sale, the trial chancellor may approve the terms and conditions reported by the special commissioner, and that any error or irregularity of the decree of sale in that connection is thereby cured.

We regard it as unnecessary to discuss at any length the contention that no injustice having resulted from the failure to comply with essential procedural requirements, their non-performance is excused, for the simple reason that the circumstances developed by not complying with the required rules cannot be determined to be the same as those that would have occurred if the standard procedure had been followed. For example: if the terms of sale are fixed by the court, which is the actual salesman, the special commissioner being merely its representative with only granted powers, bidders might be attracted by a notice of sale specifying terms, who would not attend the sale if they did not feel that by doing so they would be given the opportunity to enter into a binding contract, the court's representative then and there being plainly empowered by its order to proceed on that basis. Long experience has demonstrated beyond peradventure that from the standpoint of practical business methods in the vast majority of cases the most advantageous method is to fix the terms of sale in advance, usually requiring a down payment on the day of sale as an earnest awaiting confirmation.

In so far as according to the owners the right to redeem, that method is well settled in this state, and we think it is unnecessary to cite more authority than *Arbenz* v. *Arbenz,* 114 W. Va. 804, 173 S. E. 881. As far as advertising in Ritchie County is concerned, that requirement is fixed by statute. Code, 55-12-2. *Central Trust Co.* v. *Feamster,* 123 W. Va. 250, 14 S. E. 2d 619. As far as fixing the duration of the notices of sale, that rests within the trial court's discretion, and must be exercised, not in the decree confirming the sale, but in the decree of sale itself. *Beaty et al.* v. *Veon et al.,* 18 W. Va. 291.

The first contention against the allowance of the claim of Beuna Wood is to the effect that in order for a daughter to recover against a parent or the estate of a parent for services rendered in personal care and maintenance, the claim must necessarily be based upon an express contract, and that the claimant here has been unable to meet that requirement.

Unfortunately, the discussion, if not the holding, in this state affecting this question lacks uniformity of expression. In the case of *Keys, Admr.* v. *Keys et al.,* 93 W. Va. 33, 116 S. E. 681, this Court held that services rendered by one member of a family to another member closely related by consanguinity were presumed to be gratuitous and did not constitute a consideration which would sustain a subsequent promise to pay, but that that presumption was overcome by "some note or writing of the person benefited evidencing an intention that the services should be paid for * * *." In the case of *Gardner* v. *Gardner,* 112 W. Va. 583, 160 S. E. 112, this Court reached the conclusion, in a case quite similar to the case now before us, that the services of a daughter rendered a mother, both living in the paternal home, were gratuitous, no promise to pay having been shown. In the *Gardner* case, however, the Court took the position that if the circumstances clearly imply a contract entered into at the time the services are performed, the person rendering the services may recover their reasonable value from the estate of the recipient. *In Re Estate of John C. Gilbert, Deceased,* 115 W. Va. 599, 177 S. E. 529, this Court reversed the disallowance of a daughter's claim for the support and maintenance of her father, holding that in order to sustain claims of that nature, an express contract need not be shown, but that the nature of the services and of the understanding may be established by inference or implication from the surrounding facts and circumstances. We are of the opinion that a careful examination of the opinions in the West Virginia cases will show that, in spite of the conflict that exists in their express language, they adhere to the same basic principle that where the relationship of parent and child, or any relationship of con-

sanguinity and circumstances akin thereto, is shown to exist, the presumption is that the services related to the care and maintenance of either party by the other are presumed to be rendered gratuitously, and that in order to recover therefor the claimant must go beyond showing the rendition of the service, its value, and the fact that no remuneration has been received. In order to overcome the presumption that pay was not intended, it must be shown that at the start the recipient expected to pay and the performer expected remuneration. This may be shown by either an express understanding or by clear proof of circumstances from which it is necessarily implied.

In so far as being able to establish an agreed, definite consideration is concerned, it is likely that the appellants' position is maintainable. However, Mrs. Hibbs, according to the claimant and the claimant's witnesses, stated several times during the period in question that she had agreed and wished to pay Mrs. Wood for her services the amount customarily paid in that neighborhood for like services, and a Mrs. Starr, who acted as Mrs. Hibbs' housekeeper for several months, testified that she had heard Mrs. Hibbs and Mrs. Wood, in the summer of 1935, discuss the matter and enter into that sort of an agreement. Furthermore, in 1939, Mrs. Hibbs signed a memorandum confirmatory of a previous understanding with Mrs. Wood.

We believe that there is sufficient proof to sustain a finding that an agreement was actually entered into at the beginning of the services, and that neither Mrs. Hibbs nor Mrs. Wood entertained the purpose of having the services gratuitously rendered, but that they both understood that they were to be paid for by Mrs. Hibbs when the time arrived that they were no longer necessary, either upon her recovery or death. We have here a situation in which there is sufficient evidence to sustain an express contract to pay the reasonable worth of Mrs. Wood's services within a reasonable time after they were ended, so that it is unnecessary to rely upon the presumption giving rise to an implied contract, and certainly if there was a definite understanding to pay for the services a price that was capable of being understood and ascertained when the

agreement was made, that agreement may be treated as an express contract, the consideration to sustain which is not required to be a certain amount of money, but only an amount which an extraneous inquiry as to the meaning of the contract's terms can reduce to practical certainty. Here Mrs. Hibbs agreed to pay the amount that practical nurses in that neighborhood usually received. The contract was fully performed on the part of Mrs. Wood, which fact relaxes the rule requiring definiteness of terms in the case of an executory understanding. See 6 R. C. L. 649.

It is contended also that the testimony of Mrs. Starr, essential to sustain the claimant's demand as to the understanding between her and her mother, is inadmissible due to the fact that Mrs. Starr had an understanding with Mrs. Wood that they would divide equally whatever compensation Mrs. Wood received for the services, at the time of the understanding, being rendered by them both. This understanding is denied by Mrs. Starr as well as by Mrs. Wood, so that we do not regard Mrs. Starr's disqualification as a witness as established by the proof.

There is a great deal of testimony having to do with benefits received by Mrs. Wood from living on her mother's home place for the years between 1935 and 1939 in the way of milk, vegetables and shelter for herself and husband, in addition to money received for different articles sold from the farm. Testimony was taken also as to different amounts paid by the husband of Mrs. Wood to cover expenses incurred in the operation of the farm. We regard it as entirely unnecessary to go into the details of this testimony beyond saying that the appellants' assignment of error based upon that ground we do not regard as being sufficiently apparent to justify a reversal.

For the foregoing reasons, the decree of the Circuit Court of Wood County is affirmed as to the allowance of the claim of Beuna Wood, and is reversed as to the provisions for sale of the real estate involved.

*Affirmed in part; reversed in part.*